IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Kamondai Richard Young, | ) | No. CV 14-00733-TUC-RCC (CRP) |
| Petitioner, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Charles L. Ryan, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, confined in the Yuma County, Arizona Detention Center, and proceeding *pro se*, has filed an Amended Petition Under 28 U.S.C. § 2254 For A Writ of Habeas Corpus By A Person In State Custody (Non-Death Penalty). (Doc. 8, Am. Pet.). Respondents have filed a Limited Answer (Doc. 25, Answer) and Petitioner has filed a Reply (Doc. 37, Reply). Pursuant to the Rules of Practice of this Court, this matter was referred to the Magistrate Judge for a Report and Recommendation. (Doc. 9, Order). *See* LR Civ 72.1. After considering the briefing, exhibits and relevant law, the Magistrate Judge recommends that the District Court, after its independent review, deny and dismiss the Amended Petition.

**I.     Factual and Procedural History**

**A.     Petitioner's Conviction and Sentence**

On May 19, 2010, law enforcement officers executed a search warrant on Petitioner's place of residence (1575 E. 9th Street) and found inside the furnace located in a rear laundry room a loaded .357 Ruger Police Six revolver and at least two boxes of ammunition. (TR

1    4/26/11 at 58, 66-73, 89-91, 93-94, 130-35).[1]   Officers determined that the address was

2    Petitioner's residence based on information obtained from a computer data base (Spillman).

3    (*Id.* at 90-91; TR 4/27/11 at 51-52).   Petitioner was not present at the time of the search but

4    five other persons were present at the residence, four of whom were illegal entrants. (TR

5    4/26/11 at 131).   Officers also found at the residence a box and a notebook both with

6    Petitioner's name on them.  (*Id.* 63-65).  Petitioner was arrested the same day as the search.

7    (*Id.* 73-75). Officers determined that the pistol and ammunition found during the search

8    belonged to John Sproul who reported the gun missing on May 24, 2010.  (*Id.* 40-47, 50-51,

9    93-97).  On May 25, 2010, Mr. Sproul informed Sheriff's Deputy Glen Ortiz that Elizabeth

10   F., the 14-year-old daughter of Sproul's girlfriend, had information about the gun.  (*Id.* 45-

11   47).  Deputy Ortiz testified at trial that he was given information by Sproul that led him to

12   speak with Elizabeth F. and this information "contained" Petitioner.  (*Id.* 46-51).  Testing

13   showed that Petitioner's DNA matched the sample swabbed from the gun's grip at five loci,

14   and he could not be excluded at the remaining 9 loci.  (TR 4/27/11 at 17-29).

15        On January 13, 2011, Petitioner was charged with one count of theft of property

16   valued at less than $1,000, that is, the handgun and two boxes of ammunition (Count One),

17   and one count of weapons misconduct, knowingly possessing a deadly weapon or prohibited

18   weapon by a prohibited possessor (Count Two). (Ex. A, Superseding Indictment, *State v.*

19   *Young*, Case No. CR201000586, Cochise County Superior Court).   Trial was severed as to

20   the two counts. (TR 4/18/11 at 2).  During Petitioner's trial on Count One, the prosecutor

21   questioned Deputy Ortiz over Petitioner's hearsay objection about Ortiz' conversation with

22   Elizabeth F., a minor,  who had moved out of state by the time of trial.  (TR 4/26/11 at 46-

23

24        [1] Relevant portions of the state court record are attached to Respondents' original
     Limited Answer  as Exhibits A through E  (Doc. 13) and to Respondents' second Limited
25   Answer as Exhibits F and G.  (Doc. 25).  Respondents also have submitted with their second
     Limited Answer certain state court trial transcripts ("TR") identified by date.  (Doc. 25).
26   Unless otherwise noted, the Court has cited to the state court record by exhibit number and
27   transcript date without the corresponding docket number assigned to Respondents' Answer.

28

51).  During deliberations on Count One, the jury notified the trial court that it was having trouble reaching a unanimous verdict but after the court suggested that it reconvene, the jury continued its deliberations and reached a verdict of guilty.  (Ex. G 4/28/11 Min. Entry & TR 4/28/11-Day 3 at 2-5).  Petitioner ultimately was found guilty on both counts charged.  (Ex. B, Sentence of Imprisonment).  On May 23, 2011, the trial court sentenced Petitioner to concurrent presumptive prison terms totaling 4.5 years, with the sentence to run consecutive to a sentence imposed in another case, No. CR 200900621, Cochise County Superior Court.  (*Id.*).

Petitioner appealed to the Arizona Court of Appeals, asserting the following issues regarding his conviction on Count One:  (1) violation of his constitutional right to confront and cross-examine witnesses against him when the trial court allowed Deputy Ortiz to testify about his out-of-court conversations with Elizabeth F., a minor; and (2) the trial court erred when it coerced the jury by ordering further deliberations on the theft charge after the jury foreperson informed the court that the jury could not reach a verdict on Count One.  (Ex. C, Appellant's Opening Br., *State v. Young*, No. 2CA-CR 2011-0179).  In an unpublished memorandum decision filed on March 30, 2012, the Arizona Court of Appeals affirmed Petitioner's convictions and sentence. (Ex. D, *State v. Young*, No. 2CA-CR 2011-0179, Mem. Decision).  The appellate court found that Petitioner had not preserved  the Confrontation Clause issue for review but there was no fundamental error and any argument of fundamental error had been waived, and that the jury coercion issue was not meritorious.  (*Id*. at ¶¶ 4-9). Petitioner did not petition for review in the Arizona Supreme Court and the state appeals court mandate issued on August 2, 2012.  (Ex. E, Mandate).  Petitioner did not file a petition for writ of certiorari and did not file for post-conviction relief under Rule 32 of the Arizona Rules of Criminal Procedure.  (Doc. 25, Answer at 8).

//

//

//

1   **B.**    **The Amended Petition**

2          Petitioner filed his original Petition for Writ of Habeas Corpus in the federal court on

3   January 15, 2014. (Doc. 1).[2] The Court dismissed the original Petition with leave to amend

4   to name a proper respondent. (Doc. 5, Order). Petitioner filed an Amended Petition naming

5   the proper Respondent on June 23, 2014. (Doc. 8, Am. Pet.). Petitioner asserts the following

6   grounds in the Amended Petition:

7          Ground One: The state trial court violated Petitioner's Sixth Amendment right to

8   confront and cross-examine witnesses by allowing Deputy Ortiz to testify about his out-of-

9   court conversations with Elizabeth F., a minor, who was not present at the time of trial (Am.

10   Pet. at 6);

11          Ground Two: The state trial court improperly instructed the jury to continue its

12   deliberations after the foreperson notified the court that the jury was unable to reach a verdict

13   (*Id.* at 7); and

14          Ground Three: Newly discovered material facts exist that were discovered after trial

15   that probably would have changed the verdict or sentence, that is, Arizona law may have

16   changed regarding constructive possession.  (*Id.* at 8).

17          Respondents contend that Petitioner's habeas petition is barred as untimely filed, that

18   Petitioner is not entitled to statutory tolling, and that Petitioner has not asserted grounds for

19   equitable tolling. (Answer at 9-10). Respondents also argue that the grounds Petitioner has

20   asserted in his Amended Petition are procedurally defaulted and should be dismissed. (*Id.* at

21   11-15). Respondents have not addressed the merits of Petitioner's claims.

22

23       [2]  The original Petition was file-stamped on January 21, 2014.  (Doc. 1, Pet.).
Petitioner is entitled to application of the "mailbox rule" in which the court deems the

24   petition filed as of the date that Petitioner signed the petition and gave it to prison authorities
to mail. *Houston v. Lack*, 487 U.S. 266, 276 (1988).  *See Roberts v. Marshall*, 627 F.3d 768,

25   770 n. 1 (9th Cir. 2010) ("[w]hen a prisoner gives prison authorities a habeas petition or other
pleading to mail  to court, the court deems the petition constructively 'filed' on the date it is

26   signed."). Petitioner filed his original federal  habeas petition on January 15, 2014, the date

27   he signed it and avowed that he placed it in the prison mailing system.  (Doc. 1 at 11).

28                                  - 4 -

1    **II.      Discussion:  Timeliness of the Federal Habeas Petition**

2           Respondents contend that Petitioner's federal habeas petition is time-barred because

3    it was not filed within the applicable one-year time period.  Respondents further argue that

4    Petitioner is not entitled to statutory tolling and he has not asserted cognizable grounds for

5    equitable tolling.

6    **A.      The Petition Was Not Timely Filed**

7           A one-year period of limitations  applies to an application for writ of habeas corpus

8    by a person in custody pursuant to the judgment of a State court.  28 U.S.C. § 2244(d)(1).

9    Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state

10   prisoner must generally file a petition for writ of habeas corpus within one year from "the

11   date on which the judgment became final by the conclusion of direct review or the expiration

12   of time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).

13          Petitioner appealed his conviction to the Arizona Court of Appeals who affirmed in

14   a memorandum decision filed on March 30, 2012.  (Ex. D, Mem. Decision).  Respondents

15   contend that Petitioner's period of direct review ended on June 30, 2012, 90 days after the

16   date the Arizona Court of Appeals affirmed his convictions. Respondents reach this

17   conclusion by adding the 90-day period within which Petitioner ostensibly could have filed

18   for certiorari to the United States Supreme Court. (Answer at 9).  *See Bowen v. Roe*, 188 F.3d

19   1157, 1158-59 (9th Cir. 1999) ("[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A)

20   includes the [90-day] period within which a petitioner can file a petition for a writ of

21   certiorari from the United States Supreme Court, whether or not the petitioner actually files

22   such a petition.").

23          Here, however, Petitioner did not seek review of the Arizona Court of Appeals

24   decision in the Arizona Supreme Court.  In *Gonzalez v. Thaler*, 565 U.S. __, 132 S. Ct. 641,

25   656 (2012), the Supreme Court held that where a state prisoner does not seek review in the

26   State's highest court, the judgment becomes final on the date the time for seeking such review

27   expires. Petitioner's last direct review proceeding, his appeal to the Arizona Court of

28                                              - 5 -

Appeals, terminated on March 30, 2012, when the State Court of Appeals denied the appeal. Petitioner had 30 days, plus five days after service by mail, after the Arizona Court of Appeals decision to seek review by the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a) ("Within 30 days after the Court of Appeals issues its decision, any party may file a petition for review with the clerk of the Supreme Court...."); Ariz. R. Crim. P. 1.3 (expanding time limits by five days after service by mail); *State v. Rabun*, 162 Ariz. 261, 782 P.2d 737 (1989). Because Petitioner did not seek such review, the judgment became final on the expiration of that time, on May 4, 2012, and the 1- year period began running the next day, on May 5, 2012.

The Arizona Court of Appeals mandate issued on August 2, 2012. (Exhibit E, Mandate). Absent state law to the contrary, an appeal is deemed concluded upon the decision of the state court, and not upon issuance of its mandate. *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir.2007) (petitioner's "direct appeal was final upon the expiration of the time for seeking review of the Court of Appeals decision in the Arizona Supreme Court" and did not continue until issuance of the mandate by the Arizona Court of Appeals). Petitioner also is not entitled to the additional 90-day delay for seeking certiorari in the U.S. Supreme Court based on the holding in *Gonzalez v. Thaler*.

The one-year limitations period commenced on May 5, 2012 and expired on May 4, 2013. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying anniversary method of Fed.R.Civ.P. 6(a) to calculate the expiration of AEDPA's one-year limitations period). Petitioner filed the original federal habeas Petition on January 15, 2014, the date he signed the petition and avowed that he placed it in the prison mailing system, applying the mailbox rule.[3] His habeas petition therefore was untimely filed under AEDPA's limitations period because it was filed more than one year after his state court conviction became final.

---

[3] Respondents cite January 21, 2014, the date the original Petition was filed on the docket, as the date for purposes of the limitations period. (Answer at 8-9).

1    **B.    Petitioner Is Not Entitled To Statutory Tolling**

2    Pursuant to 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed

3    application for State post-conviction or other collateral review with respect to the pertinent

4    judgment or claim is pending shall not be counted toward any period of limitation."

5    Petitioner did not file for post-conviction relief in the State courts.  He therefore is not

6    entitled to statutory tolling.

7    **C.    Petitioner Is Not Entitled To Equitable Tolling**

8    The Court next considers Respondents' argument that Petitioner is not entitled to

9    equitable tolling.  (Answer at 9).  For equitable tolling to apply to AEDPA's limitations

10   period, the petitioner must demonstrate (1) that he has been pursuing his rights diligently and

11   (2) that some extraordinary circumstance stood in the way and prevented timely filing.

12   *Holland v. Florida*, 560 U.S. 631, 649 (2010).  The extraordinary circumstance must have

13   made it impossible to file the petition on time.  *Lakey v. Hickman*, 633 F.3d 782, 786 (9th

14   Cir. 2011).  Equitable tolling also is appropriate if the petitioner establishes his actual

15   innocence under *Schlup v. Delo*, 513 U.S. 298 (1995).  "Actual innocence, if proved, serves

16   as a gateway through which a petitioner may pass whether the impediment is a procedural

17   bar ... or expiration of the [AEDPA] statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct.

18   1924, 1928 (2013). To invoke this exception to the statute of limitations, a petitioner " 'must

19   show that it is more likely than not that no reasonable juror would have convicted him in the

20   light of the new evidence.'" *Id*. at 1935 (quoting *Schlup*, 513 U.S. at 327). The determination

21   of whether to apply equitable tolling is fact specific and petitioner "bears the  burden of

22   showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*, 432 F.3d

23   1021, 1026 (9th Cir. 2005). Respondents contend that Petitioner did not assert grounds for

24   equitable tolling in his Amended Petition and that the record provides no basis for equitable

25   tolling. (Answer at 10).

26   In his Reply, Petitioner asserts as grounds to excuse the untimely filing of his petition

27   that his counsel on appeal was not effective, that Petitioner did not know what his next move

28

was after his direct appeal was affirmed, and that he was not able to continue the process effectively after the August 2, 2012 (date of State Appeals Court mandate) deadline due to movements within the prison.  (Doc. 37 at 8).  Elsewhere in his Reply he contends he was not able to speak with his attorney regarding what steps to take in advancing the appeal process.  (*Id*. at 6).  He asserts that before August 2, 2012,  "the Yuma Complex Cibola Unit was renovating their housing units and were constantly moving inmates from their bunks to housing units from April through August."  (*Id*.).

Although an attorney's conduct can establish the extraordinary circumstances required for equitable tolling, miscalculation of the limitations period or negligence in general is insufficient. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001). A "'garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline does not warrant equitable tolling.'" *Holland,* 560 U.S. at 651-652. The attorney's misconduct must rise to the level of extraordinary circumstances. *Id.* Petitioner's conclusory claim that appellate counsel was not effective does not show the kinds of extreme misconduct that courts have found to establish grounds for equitable tolling. *See e.g. Holland*, 560 U.S. at 652-53 (attorney's repeated failure to respond to a client's letters over a period of years, and demands for timely action, might establish equitable tolling); *Gibbs v. LeGrand*, 767 F.3d 879 (9th Cir.2014) (grounds for equitable tolling where counsel failed, despite petitioner's repeated inquiries, to inform petitioner that the state court had denied the appeal of his state post-conviction petition, with federal habeas limitations period expiring in the interim).  Petitioner does not sufficiently support his conclusory claim that he was unable to speak with his attorney by factually describing the reasons for that lack of communication, that is, the specific hindrance or impediment that prevented him from speaking with counsel.

Petitioner's *pro se* status on its own is insufficient to warrant equitable tolling.  *Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).  A *pro se* petitioner's confusion or ignorance of the law and placement in administrative segregation are not *singular* circumstances that justify equitable tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (inability

1   to correctly calculate the limitations period or lack of legal sophistication); *Ramirez v. Yates*,

2   571 F.3d 993, 998 (9th Cir. 2009) ("ordinary prison limitations" such as administrative

3   segregation and limited access to the law library and copy machine).

4        A petitioner who is confined to administrative segregation and deprived of his legal

5   materials may be entitled to equitable tolling if the confinement made it impossible for him

6   to file a timely federal habeas petition and it was an extraordinary circumstance. *Ramirez*,

7   571 F.3d at 1000-01. A *pro se* prisoner's lack of access to his legal materials during a prison

8   transfer or temporary relocation can constitute an "extraordinary circumstance" that justifies

9   equitable tolling. *Espinoza-Matthews*, 432 F.3d at 1027-28; *Lott v. Mueller*, 304 F.3d 918,

10  924-25 (9th Cir. 2002). Tolling is justified in such cases because it is "unrealistic to expect

11  a habeas petitioner to prepare and file a meaningful petition on his own within the limitations

12  period without access to his legal files." *Espinoza-Matthews*, 432 F.3d at 1027.  To prevail

13  on a claim of equitable tolling, the petitioner must allege a causal connection between the

14  extraordinary circumstance and the untimely filing and demonstrate reasonable diligence in

15  pursuing his federal rights. *Holland*, 560 U.S. at 653; *Lakey*, 633 F.3d at 786.

16       Petitioner contends that his movement or relocation within the prison occurred prior

17  to August 2, 2012, that is, from April through August 2012.  (Doc. 37 at 6).  He asserts no

18  factual circumstances after August 2, 2012, that prevented him from timely filing his original

19  habeas petition within the applicable one-year period. Petitioner has not asserted grounds

20  sufficient for equitable tolling based on extraordinary circumstances that made it impossible

21  to file the petition on time.  Petitioner further has not demonstrated reasonable diligence in

22  pursuing his federal rights.

23       With respect to any claim of actual innocence, Petitioner "asserts [his] innocence" by

24  contending in his Reply that the house where the gun and ammunition were found was

25  registered to "[his] mother as the sole owner of the property." (Doc. 37 at 2).  He also claims

26  in his Reply that the gun Mr. Sproul reported stolen was found on May 19, 2010, inside the

27  furnace at "the residence of Kyndell Douglas 1575 E. 9th St. Douglas, AZ ... Kyndell Douglas

28

1  is the registered owner of the property" to which "12 occupants had access" and that the
2  prosecutor should have filed charges against Douglas. (*Id.* at 8). Petitioner in Ground Three
3  of his Amended Petition and in his Reply asserts that he has newly discovered evidence as
4  of "2011 of June-July," citing "A.R.S. law book," that Arizona law may have changed
5  regarding criminal charges based on constructive possession. (Am. Pet. at 8; Doc. 37 at 9-
6  10). Petitioner's assertion is not based on newly discovered evidence. As Respondents point
7  out, there has been no substantive change in Arizona law regarding constructive possession.
8  (Answer at 14, citing *State v. Gonsalves*, 297 P.3d 927, 929 ¶ 9 (Ariz. App. 2013) ("One who
9  exercises dominion or control over property has constructive possession of it even if it is not
10  in his physical possession.") (quoting *State v. Chabolla-Hinojosa*, 965 P.2d 94, 97 ¶ 13 (Ariz.
11  App. 1998)).

12       While the *Schlup* standard is exacting, permitting review based on equitable tolling
13  only in an "extraordinary" case, "absolute certainty" as to a petitioner's guilt or innocence
14  is not required. *House v. Bell*, 547 U.S. 518, 538 (2006). This exception applies "only when
15  a petition presents 'evidence of innocence so strong that a court cannot have confidence in
16  the outcome of the trial' unless the court is also satisfied that the trial was free of
17  nonharmless constitutional error." *McQuiggin*, 133 S.Ct. at 1936. To make a credible claim
18  of actual innocence for purposes of equitable tolling, Petitioner must produce "new reliable
19  evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts,
20  or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The
21  grounds Petitioner asserts to prove his actual innocence and thereby allow equitable tolling
22  fall short of this standard.

23       The Magistrate Judge recommends the finding that Petitioner's original federal habeas
24  petition was not timely filed.

25  //
26  //
27  //
28                                            - 10 -

1   **III.      Discussion: In the Alternative, Petitioner's Grounds are Procedurally Defaulted**

2          The Magistrate Judge alternatively considers Respondents' additional argument that

3   the grounds asserted in the Amended Petition should be dismissed as procedurally defaulted

4   or not exhausted.  (Answer at 11-15).

5   **A.      Legal Standards**

6          To be eligible for federal habeas corpus relief, a state prisoner must establish that he

7   is "in custody in violation of the Constitution or laws or treaties of the United States."  28

8   U.S.C. § 2254(a).  A state prisoner must exhaust his remedies in state court before petitioning

9   for a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*,

10  513 U.S. 364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991).  To

11  properly exhaust state remedies, a petitioner must fairly present his claims to the state's

12  highest court in a procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838,

13  848 (1999).  In Arizona, a petitioner must fairly present his claims to the Arizona Court of

14  Appeals by properly pursuing them through the state's direct appeal process or through

15  appropriate post-conviction relief.  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999);

16  *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).

17         A claim has been fairly presented if the petitioner has described both the operative

18  facts and the federal legal theory on which the claim is based.  *Baldwin v. Reese*, 541 U.S.

19  27, 29, 33 (2004); *Sivak v. Hardison*, 658 F.3d 898, 908 (9th Cir. 2011).  "[A] state prisoner

20  has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he

21  specifically indicated to that court that those claims were based on federal law."  *Lyons v.*

22  *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th

23  Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal

24  constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues

25  raised in state court." *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996). "[G]eneral appeals

26  to broad constitutional principles, such as due process, equal protection, and the right to a fair

27

28                                          - 11 -

1    trial, are insufficient to establish exhaustion." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th

2    Cir. 1999) (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

3        A claim may be procedurally defaulted in federal court if it was actually raised in state

4    court but found by that court to be defaulted on state procedural grounds. *Coleman v.*

5    *Thompson*, 501 U.S. 722, 729-30 (1991). A claim also may be procedurally defaulted if the

6    petitioner failed to present it in state court and "the court to which the petitioner would be

7    required to present his claims in order to meet the exhaustion requirement would now find

8    the claims procedurally barred." *Id.*, at 735 n.1.

9        If a petition contains claims that were never fairly presented in state court, the federal

10   court must determine whether state remedies remain available to the petitioner. *See Coleman*

11   *v. Thompson,* 501 U.S. 722, 735 n.1 (1991); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982);

12   *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998). If remedies are still available in state

13   court, the petition may be dismissed without prejudice pending the exhaustion of state

14   remedies. *Rose v. Lundy,* 455 U.S. at 510. If the court finds the petitioner would have no

15   state remedy were he to return to the state court, his claims are considered procedurally

16   defaulted. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *see also Sandgathe v. Maass*, 314

17   F.3d 371, 376 (9th Cir. 2002) (a defendant's claim is procedurally defaulted when it is clear

18   the state court would hold the claim procedurally barred).

19       The federal court will not consider these claims unless the petitioner can demonstrate

20   that a miscarriage of justice would result, or establish cause for his noncompliance and actual

21   prejudice. *See Dretke v. Haley*, 541 U.S. 386, 392-93 (2004); *Schlup v. Delo*, 513 U.S. 298,

22   321 (1995); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). To establish a "fundamental

23   miscarriage of justice," a state prisoner must show that it is more likely than not that no

24   reasonable juror would have convicted him in the light of the new evidence. *Schlup*, 513

25   U.S. at 327. A state prisoner demonstrates "cause" by showing that some objective factor

26   external to the prisoner or his counsel impeded efforts to comply with the state's procedural

27   rules. *See Murray v. Carrier*, 477 U.S. at 488. To establish prejudice, the prisoner must show

28

that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Where a petitioner has not shown cause for his procedural default, the Court does not consider whether petitioner has shown prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

**B.   Application**

**1.   Ground One: Violation of Confrontation Clause**

Petitioner contends that his Sixth Amendment right to confrontation was violated based on Deputy Ortiz' testimony about an out-of-court conversation with the minor, Elizabeth F., as allowed by the state trial court. During trial, when questioned by the prosecutor on direct examination, Deputy Ortiz testified that on May 25, 2010, Mr. Sproul told him that his "stepdaughter" had some information about his weapon. (TR 4/26/11 at 46). The following occurred during this line of questioning:

| | |
|---|---|
| Prosecutor: | What was her demeanor when you spoke to her? |
| Deputy Ortiz: | She was very nervous - - |
| Defense Counsel: | Your Honor, I am going to object. This is speculation. |
| The Court: | Overruled. You can testify as to your observations. ... |
| Prosecutor: | What was her demeanor while you spoke to her? |
| Deputy Ortiz: | She appeared to be upset, nervous. She was crying. |
| Prosecutor: | Okay. Did you ultimately conclude that Kamondai Young was a suspect in the theft of Mr. Sproul's gun? |
| Deputy Ortiz: | Yes. |
| Defense Counsel: | Objection, relevance, Your Honor. |
| The Court: | Sustained. I'll sustain that. |

(*Id*. at 46-47). During an ensuing bench conference, the prosecutor said he intended to ask Deputy Ortiz why he spoke with Elizabeth and that he expected Ortiz to say because Mr. Sproul said she knew Petitioner. The prosecutor said he was not introducing this as hearsay

for the truth of the matter asserted but to show the effect upon the listener. (*Id*. at 47-50). Defense counsel argued that this was "three-way hearsay for a witness that went back to Arkansas." (*Id*. at 48-50). The trial court ruled that the State could ask Deputy Ortiz about his conversation with Elizabeth to show its effect on Deputy Ortiz' actions and observations. (*Id*.). In the ensuing direct examination of Deputy Ortiz on the record, the following occurred:

| | |
|---|---|
| Prosecutor: | Did you speak to Elizabeth F.? |
| Deputy Ortiz: | Yeah. |
| Prosecutor: | Why? |
| Deputy Ortiz: | I was told – |
| Defense Counsel: | Objection, that's hearsay. |
| The Court: | The way that the answer was phrased, it likely was, but you may proceed, Mr. Akers . |
| Prosecutor: | Were you given information by Mr. Sproul that led you to speak to Ms. F.? |
| Deputy Ortiz: | Yes. |
| Prosecutor: | Did that information contain Kamondai Young? |
| Deputy Ortiz: | Yes. |
| Defense Counsel: | Objection, that's hearsay, Judge. |
| The Court: | Overruled. |
| Prosecutor: | Effect on the listener, Judge. |
| The Court: | Overruled. That can stand. |

(*Id*. at 50-51).

Petitioner raised the Confrontation Clause violation issue on direct appeal. (Ex. C, Appellant's Opening Br. at 11; "Issue I: Mr. Young's Constitutional Right To Confront And Cross-Examine The Witnesses Against Him Was Violated By The Court Allowing Deputy Ortiz To Testify Relating To [Ms. F.'s] Statements To Himself And Sproul"). Petitioner

1    argued that he was connected to the alleged victim "when the trial court allowed Deputy
2    Ortiz to testify that statements were made by Mr. Sproul to him and statements were made
3    by Ms. F. to him" and these statements "were that [Ms. F.] ... indicated that she knew
4    Kamondai Young."  (*Id.* at 12).  Petitioner argued that this "hearsay testimony linked"
5    Petitioner and Mr. Sproul and violated Petitioner's  "constitutional right to confront and
6    cross-examine a critical witness against him, [Ms. F.]"  (*Id* at 12).[4] The Arizona Court of
7    Appeals found that Petitioner did not preserve the Confrontation Clause claim for review,
8    reviewed the issue for fundamental error but found "nothing that can be so characterized,"
9    and determined that the argument was waived.  (Ex. D, Mem. Decision at 3-4).  Within this
10   discussion, the appellate court stated that Petitioner "has not established his confrontation
11   rights were even implicated by the deputy's testimony."  (*Id.*).

12       "The Sixth Amendment to the United States Constitution, made applicable to the
13   States via the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the
14   accused shall enjoy the right ... to be confronted with the witnesses against him.'"
15   *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (citation omitted). As indicated
16   above, the trial court record shows that Petitioner did not object during trial based on a
17   violation of the Confrontation Clause regarding this line of questioning.  A claim is
18   procedurally defaulted if it was actually raised in state court but found by the state court to
19   be waived based on state grounds. *Coleman*, 501 U.S. at 729-30. Ground One is procedurally
20   barred.

21   _____

22       [4] Although Petitioner contends in Ground One that his constitutional right to confront
23   and cross-examine witnesses against him was violated, Petitioner appears to also contend that
     the testimony of the unavailable witness Elizabeth F. possibly would have been favorable to
24   him. Petitioner asserts that, "I believe if Elizabeth could of gave her testimony in court it
     would of helped my case a lot ... that I had nothing to do with the gun being stol[en]." (Am.
25   Pet. at 6).  In his Reply regarding Ground One, Petitioner argues, "I wasn't able to use her
26   as a witness in cross-examination where her testimony would of been used to prove that I
     couldn't of known there was a gun at the Sproul [residence] because I've never been to the
27   house." (Reply at 6).  Petitioner did not argue these grounds in the state court appeal.

28                                    - 15 -

The Court further has considered the merits of Ground One.  Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the State court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).  The record shows that the prosecutor asked Deputy Ortiz about his out-of-court conversation with the absent witness to show the effect on the listener and  actions taken by Deputy Ortiz.  The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

Moreover, Confrontation Clause claims are subject to harmless error analysis. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004).  "A Confrontation Clause violation is harmless, and so does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict." *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir.2011) (internal quotation marks omitted) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).  Here, the jury heard evidence that the  residence where the gun was found was Petitioner's address based on information in a computer data base; the residence contained a box and notebook bearing Petitioner's name; and Petitioner's DNA matched the sample taken from the gun's grip.  (TR 4/26/11 at 63-65, 90-91; TR  4/27/11 at 17-29, 51-52).  The State Court of Appeals decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts.

**2.    Ground Two:  Alleged Jury Coercion**

Petitioner contends that the trial court violated his due process rights when it improperly instructed the jury to continue deliberations after the foreperson reported that the

jury was unable to reach a verdict.  Petitioner raised this issue on direct appeal as a claim of state law error, not as a claim of violation of federal law or of the United States Constitution. (Ex. C, Appellant's Opening Br. at 14-17 ("Issue Two:  The Court Committed Reversible Error By Coercing The Jury Back To Deliberate The Case After He Was Informed That The Jury Could Not Reach A Verdict"); Ex. D, Mem. Decision at 4-7).  The issue therefore was not "fairly presented" because the federal-law basis of the claim was not described to the state appellate court.  Ground Two is exhausted but procedurally barred.

**3.     Ground Three: Change in Arizona Law**

Petitioner asserts that evidence discovered after trial would have altered the verdict or sentence.  The basis of Ground Three is not newly discovered evidence but Petitioner's assertion that his post-trial legal research revealed a change in Arizona law regarding the definition of constructive possession. Petitioner did not raise this ground in any state court proceeding. The claim is exhausted but procedurally barred.

**4.     Available State Court Remedies**

Any return to state court by Petitioner as to these three grounds would be "futile." Petitioner would no longer have a remedy if he returned to the state court.  The time has passed to seek post-conviction relief in state court under Ariz.R.Crim.P. 32.4(a) and Petitioner has not shown any of the exceptions to the time limits under Rule 32.1(d), (e), (f), (g) or (h) apply to him.  Arizona's procedural default rules are strictly and regularly applied. See Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a) (successive post-conviction relief proceeding allowed only under limited circumstances); *Ortiz v. Stewar*t, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly followed" Rule 32).  Because Petitioner has no available remedy in the state court for his three grounds, these claims are technically exhausted and procedurally defaulted.

**5.     Excuse for the Procedural Default**

Where issues are procedurally defaulted, federal review of the claim is not barred if the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice."

In his Reply, Petitioner asserts his lack of knowledge of the law and ineffective assistance of appellate counsel as "cause" for the procedural default of his claims:

> Petitioner is not a learned counsel, had a learned counsel for direct appeal but was not given a[n] effective learned counsel.  If Petitioner was aware of any time lines to adhere to Petitioner would of then exhausted all remedies.  Yet, here for all these proceedings Petitioner has met with all time lines and shows that if knowledge of time lines and remedies  to exhaust [were] known by Petitioner, Petitioner would of followed through with suit more effectively.

(Doc. 37 at 10).

Although in some circumstances the ineffective assistance of appellate counsel may establish cause for a procedural default, "a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, 477 U.S. at 488–89 ("the exhaustion doctrine ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); see also *Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir.1988) (exhaustion requires petitioner to first raise ineffective appellate counsel claim separately in state court before alleging it as cause for default). Petitioner did not present a claim of ineffective assistance of appellate counsel to the state courts. His assertion of ineffective assistance of appellate counsel does not establish cause to overcome the procedural bar to habeas corpus review of his three grounds.  Petitioner has not shown "cause" based on a claim that he was abandoned by post-conviction counsel. *See Maples v. Thomas*, 132 S.Ct. 912, 922 (2012) (finding cause for procedural default when an attorney "abandons his client without notice, and thereby occasions the default," but "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'"). In addition, Petitioner's status as an inmate, lack of legal knowledge and assistance, and limited legal resources do not establish cause to excuse the

procedural bar. *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir.1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default).

Petitioner's contention in his Reply that he was moved within the Yuma Complex Cibola Unit between April and August 2012 (Doc. 37 at 6), might be sufficient to show "cause," that is, an objective factor external to the prisoner or his counsel that impeded efforts to comply with the state's procedural rules under *Carrier*. However, Petitioner does not support this contention by asserting that he was deprived of his legal materials or lacked access to legal materials which prevented him from asserting his claims in a procedurally appropriate manner. *See, e.g., Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (poor access to prison library is not "cause" unless petitioner shows that petitioner himself was denied access to the library).

Even if Petitioner has shown "cause," he has not established prejudice.  Regarding Ground One, Petitioner has not shown a Confrontation Clause violation that deprived him of a fair trial.  Petitioner's claim in Ground Three is based on Petitioner's conclusory allegation that since his trial Arizona law may have changed regarding constructive possession.  Petitioner cites no legal authority in support of his argument but refers only to his interpretation of his alleged legal research. Petitioner's claim of a change in Arizona law is not newly discovered evidence that might have affected the outcome of trial.  As previously discussed, there has been no such change in Arizona law on constructive possession.  Moreover, the federal habeas court generally does not consider state-law determinations on state-law questions.  A state prisoner can obtain federal habeas relief only if his conviction violates the Constitution or the laws and treaties of the United States. *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Federal habeas corpus relief is not available for alleged

1    violations of state law or for alleged error in the interpretation of state law. *Estelle v.*
2    *McGuire*, 502 U.S. 62, 67–68 (1991).

3         With respect to Ground Two, Petitioner contends in his Reply in support of his jury
4    coercion claim that, "By setting the jury to go back to deliberations and adamantly suggesting
5    that the jury needed to come to some form of decision, the jury, not wanting to displease the
6    Court came back with a guilty verdict." (Doc. 37 at 7).  However, the state court record
7    shows that the trial court did not coerce the jury into reaching a verdict in violation of
8    Petitioner's right to a fair trial.

9         The jury began deliberations on Count One at 4:32 p.m. on the second day of trial, the
10   court recessed that day at 5:00 p.m., and the jury commenced deliberations the next morning
11   at 9:00 a.m. (Ex. F, 4/27/11 Min. Entry; Ex. G, 4/28/11 Min. Entry ).  At approximately 3:09
12   p.m. on the second day of deliberations, the foreperson informed the trial court through the
13   bailiff and thereafter in open court that the jurors were having trouble reaching a unanimous
14   decision.  (Ex. G, 4/28/11 Min. Entry & TR 4/28/11 - Day 3 at 2).  When asked by the trial
15   court "do you believe that further deliberations would be fruitful?", the foreperson
16   responded, "I'm not sure." (TR 4/28/11 - Day 3 at 2).  The trial court then asked if the jury
17   would like to try further deliberations, clarifying that the court "[did not] want in any way
18   to pressure you into making a decision in this case.  I am not asking you for any analysis of
19   the jury deliberations or anything along those lines, but I did want to find out if you believed
20   that further deliberations would be fruitful or not.  I will accept your opinion on that." (*Id.*
21   2-3).  The foreperson answered, "I don't think so." (*Id.*).   The court asked counsel for a
22   bench conference to inquire about further proceedings:

24   The Court:              Okay.  Counsel, if I could see you real quick up front.

25                          [Bench Conference]

- 20 -

| | | |
|---|---|---|
| 1 | The Court: | I expected a more definitive answer, but I don't know that it's really |
| 2 | | going to help.  Do you think that we should give them further inquiry, |
| 3 | | or call a mistrial at this point? |
| 4 | Prosecutor: | Is there any additional details that you are allowed to ask her, or would |
| 5 | | it be more along the general lines that you already asked? |
| 6 | The Court: | You know, I can ask if there is any additional information or anything, |
| 7 | | but I would be willing to do that, and then send them back in, and then |
| 8 | | they can send a note in to us or something like that. |
| 9 | Prosecutor: | Okay. |
| 10 | The Court: | Do you want to try that? |
| 11 | Defense Counsel: | I have no objection to asking generally if there is, if it's just, you know, |
| 12 | | disagreement about what the facts are, or if they just feel that they need |
| 13 | | more information, if they want to see, you know, things that aren't in |
| 14 | | evidence, they are going to have to see that stuff. |
| 15 | | |
| 16 | The Court: | Right. |
| 17 | | [End of Bench Conference] |
| 18 | The Court: | Now, ladies and gentlemen, you will only - - you will have to make |
| 19 | | your decision based solely on the evidence that was presented.  There |
| 20 | | won't be any additional evidence that will be presented to you.  It might |
| 21 | | be helpful for you, if there are specific questions that you might have, |
| 22 | | that I could attempt to answer, or if we could even ask the attorneys to |
| 23 | | present argument on specific points, if that would be helpful to you. |
| 24 | | But I am going to suggest that we give you a short time to reconvene, |
| 25 | | and then talk amongst yourselves on the issue of whether or not there |
| 26 | | is something additional that could be provided that might be helpful, |
| 27 | | |
| 28 | | |

knowing that there is not going to be any additional evidence presented.

So, why don't we give you a short time to do that, and then I will allow

you to decide, at that point, whether any further deliberations would be

at all fruitful.  And if you find that they would not, then that's fine.

You just need to let me know.  So, go ahead and reconvene in the jury

room, discuss the point for just a few minutes, and then we'll check

back in with you.  So, thank you, very much.

(*Id*. at 2-4).  The jury resumed its deliberations at 3:14 p.m. and returned with a guilty verdict on Count One at 4:20 p.m.  (*Id.* at 5; Ex. G, 4/28/11 Min. Entry).  The trial court polled the jurors who each answered that the verdict was their true and correct verdict.  (TR 4/28/11 - Day 3 at 6-7).

"Any criminal defendant ... being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988). When reviewing claims of jury coercion, a court must "consider the supplemental charge given by the trial court 'in its context and under all the circumstances.'" *Id*. at 237 (quoting *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (per curiam)); see *Jiminez v. Myers*, 40 F.3d 976, 980 (9th Cir. 1993) (applying the totality of the circumstances test to determine if the trial court's actions and statements were coercive).  A supplemental jury charge to encourage a deadlocked jury to try to reach a verdict is not coercive per se. *Allen v. United States*, 164 U.S. 492 (1896); *Lowenfield*, 484 U.S. at 237 ("The continuing validity of this Court's observations in *Allen* are beyond dispute."). The ultimate question is whether "the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision." *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir. 1983).

In *Jenkins*, 380 U.S. at 446, the Supreme Court determined that a judge's statement—"You have got to reach a decision in this case"—had a coercive effect on the

jury's deliberations. In contrast, the record here shows that the trial court suggested that the jury reconvene for a short time to discuss whether there was anything additional that could be provided, clarifying  that no additional evidence would be presented and their decision had to be based on the evidence presented. The trial court also told the jury it would be "fine" if  they told him that further deliberations would not be fruitful.  The trial court's comments did not encourage the jury to relinquish their views and return with a verdict. Petitioner has not shown prejudice from the trial court's comments.

Finally, to the extent that Petitioner has argued in his Reply miscarriage of justice based on "actual innocence" - - that is, that no reasonable juror could have found him guilty, that contention is not factually supported.  As previously discussed, Petitioner inconsistently asserts in his Reply that the house where the gun and ammunition were found belonged to his mother and to Kyndell Douglas.  (Doc. 37 at 2, 8).  The State's evidence showed that the residence was Petitioner's address based on information in a computer data base; the residence contained a box and notebook bearing Petitioner's name; and Petitioner's DNA matched the sample swabbed from the gun's grip.  (TR 4/26/11 at 63-65, 90-91; TR  4/27/11 at 17-29, 51-52).

In sum, the Magistrate Judge recommends the finding that Petitioner's three grounds are procedurally defaulted.  The Court further recommends the finding that Petitioner has not established cause and prejudice or sufficiently asserted a miscarriage of justice to excuse the procedural default of his claims.

## IV.    Conclusion

The original Petition for Writ of Habeas Corpus was not timely filed.  Petitioner is not entitled to statutory tolling and he has not shown that he is entitled to equitable tolling to excuse the untimely filing of his Petition.  In the alternative, Grounds One through Three are procedurally defaulted and Petitioner has not established cause and prejudice or a miscarriage

of justice to excuse the procedural default. The Magistrate Judge recommends that the Amended Petition for Writ of Habeas Corpus be denied and dismissed.

**V.      Recommendation**

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review, enter an Order finding that the Amended Petition for Writ of Habeas Corpus (Doc. 8) is denied and dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are not timely filed, they may be deemed waived.  The parties are advised that any objections filed are to be identified with the following case number: **CV-14-00733-TUC-RCC.**

DATED this 1st day of July, 2016.


CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 24 -